## BENJAMIN R. JENKINS v. CHARLES S. CLARKSON.

A security for the payment of money is not discharged by giving notice to the creditor to proceed against the principal, unless such notice be given in writing, agreeably to the statute.

A proposition by the creditor, that if the debtor will pay a part of the debt immediately, the whole being then due, he will give time for the balance, accepted by the debtor and carried into effect between the parties, is not such an agreement to give time as discharges the security.

FROM Hamilton county.

This action is on a sealed note dated November 11, 1823, for the amount of five hundred and seventy-one dollars thirty-seven and one-half cents, payable on or before the 20th day of January following. The note was made jointly by Peter Clarkson and the defendant, to I. & B. R. Jenkins, or order, and by them indorsed to I. Jenkins, and by him to the plaintiff. The plea filed is *non est factum*, and notice that the note was signed by the defendant as security for Clarkson, and, after it became due, the defendant urged the plaintiff to proceed and collect it of the principal debtor, who then and for a long time afterward was solvent, and had ample means to pay it, and that unless the plaintiff did so proceed,

Jenkins *v.* Clarkson.

he, the defendant, should not consider himself bound for its payment; that the plaintiff refused to collect the note of the principal until he became totally insolvent, and now seeks to obtain payment of the defendant. The case was tried on the last circuit, and the facts set up in the notice proved. It was also proved, that in the early part of 1825, I. Jenkins, one of the firm of I. & B. R. Jenkins, called on the agent of Peter Clarkson, the principal, and said to him, if Peter would pay one hundred and fifty dollars he should be indulged *a while longer*, but for what period did not appear. David Clarkson, as the agent of Peter, thereupon paid the amount required.

The court instructed the jury: 1. That the facts set up in the notice, if proved, constituted no defense to the action. 2. That notice by a surety in a note to the holder, after it became due, to proceed against the principal, and a refusal, until the principal became insolvent, would not discharge the surety, unless such notice was *in writing*. 3. That an agreement to delay payment of the remainder for a while, for a considerable time, or for a reasonable time, on condition that the defendant would then pay part of a debt due, and payment accordingly, and a delay to collect the balance for a year, or *more, would not discharge [73 the surety, though such agreement was made without his consent.

The jury, under this instruction, found a verdict for the plaintiff for the amount due on the note. The defendant's counsel filed a motion for a new trial, and urged, as reasons to sustain it: 1. That the verdict is against the evidence. 2. That the court erred in charging the jury, as secondly and thirdly above stated, on the law of the case.

Fox, for the plaintiff.

WRIGHT and WALKER, for the defendant.

Opinion of the court, by Judge WOOD:

Of the first point made in the motion it is unnecessary to take any notice, because the verdict is clearly sustained by the evidence, if the instruction given by the court to the jury was correct. Did the court err, then, in giving to the jury the law of the case? It is claimed by the counsel for the defendant, that, independently of any statutory provision, if the surety notifies the creditor to proceed against the principal debtor, and he refuses to

do so, and the principal becomes insolvent, the surety is thereby discharged. Paine v. Packard, 13 Johns., is cited as an authority. It is true the facts set up in the special plea in that case bear a very close analogy to those stated in the notice in this; but Chancellor Kent, afterward, in Johns. Cases, 555, doubted the authority of the former case; and Platt, who concurred in the decision, three years after, in King v. Baldwin, says he is convinced that decision was erroneous. The case of Fulton & Matthews, 15 Johns. 433, would seem to establish the principle as laid down in Paine v. Packard, and in the absence of our own statute, might require of us a more minute, careful, and extended investigation of all the authorities, and the reasons on which they are founded, before rejecting its authority. From the arguments of counsel and the opinions of the court, in the cases referred to, no inference can be drawn that in New York there is any statutory enactment on this subject. The presumption is there is none, or it would clearly have been adverted to. It is the common law, they decide, to give such and such rights to the surety. But has the common law anything to do with the point now before us? For more than 74] *twenty years our statutes have contained, in substance, this provision: "That when any person or persons shall, hereafter, become bound, as surety or sureties, by bond, bill, or note," etc., " and shall apprehend that his or their principal debtor or debtors is, or is likely to become, insolvent," etc., " to require, by *notice in writing*, his or their creditor or creditors forthwith to put such bond, bill, or note," etc., "in suit; and, unless the creditor or creditors," etc., " shall, in a reasonable time, commence an action on such bond, bill, or note, and proceed, with due diligence, in the ordinary course of law," etc., " such creditor or creditors," etc., " so failing to comply with the requisitions of such surety or sureties, shall forfeit the right, which he or they would otherwise have, to demand and receive of such surety or sureties the amount," etc.

Since this statute was passed, the common law rule has not been in force in this state; and it is unnecessary to inquire what its provisions are, for it has given place to the statute, and is repealed by it, if any such rule existed, as that which would discharge a surety, who gave the creditor notice to sue the principal *by parol*, if the creditor did not proceed accordingly. The statute of Ohio requires the notice to be *in writing*. It was neither proved nor claimed on the trial that any *written* notice was given.

Jenkins *v.* Clarkson.

In the next place, we are to consider whether the argument, as proved, to extend the time for the payment of the balance due on the note, discharged the surety?

The case of Beaver *v.* Butler & Hull, Wright, 363, cited by counsel, differs from the one at bar, in this: that it was definite in its terms, and for anything that appears in the report, might have been founded on a new and good consideration to extend the time for the delivery of the deed. The time was extended beyond the time fixed by the contract for its execution, until the obligee should *demand* the deed agreed to be delivered. This demand defined its limits. In Reddish's Ex'ors *v.* Pentheuse et al., the judge who presided on the trial, instructed the jury that if time was given by the creditor to the principal, without the consent of the surety, it was a defense to the action. In 5 Ohio, 214, the plaintiff, without the consent of the surety, took the warrant of attorney of the principal debtor, entered up judgment against him, with an agreement on record to stay *execution for [75 eighteen months, and the security was holden to be discharged. These decisions are believed by this court to be correct, and not to contravene what is believed to be the substance of all the leading cases: That the contract to delay payment, in order to discharge the surety, must be a valid one; it must be definite in its terms, founded on a good consideration—such a one as the principal debtor would enforce, and which would tie up the hands of the surety, prevent him from paying his principal's debt, stepping into the shoes of the creditor, and prosecuting the principal debtor himself. Such a contract, and such a one only, will discharge the surety, if made without his consent. It deprives him of his right to pay the debt the moment it is due, and to look himself to its recovery, and he ought in justice to be no longer obligated. There is, however, but a trifling analogy between such an agreement and the one proved on the trial of the case before us. In the case at bar, there was no new consideration averred or proved, and the terms of the contract were indefinite. The plaintiff said to the defendant, pay me one hundred and fifty dollars of a debt you owe me, and I will wait awhile, a considerable time or a reasonable time, for the balance. Could the principal debtor enforce such a contract, after paying the one hundred and fifty dollars? He has only done what the law would compel him to do, without any such contract. The law, indeed, would compel him to do more—

to pay the whole amount of his debt, and not merely a part, and such payment is to the benefit and not to the prejudice of the surety. There is, there can be, no consideration for such agreement good and valid in law. Could the principal debtor, we say, enforce it? How long must the plaintiff wait for the balance? *Awhile longer?* What limit does the law fix to this contract, as proved? It is said by counsel to be a reasonable time, and a reasonable time, in a case like the present, would be extremely difficult to determine. It may be a moment, an hour, a day, or a year. Who can determine it, and on what evidence can it be determined? None was given; and if such a contract were valid in other respects it must be void, because no man can tell from the proof what it is, and it can not, therefore, be enforced. If, then, the principal debtor could not enforce it against the creditor, it follows that the principal could not enforce it against the surety, had he paid the debt and prosecuted his principal for it.

76] *It is said that the contract was executed; that the one hundred and fifty dollars was paid, and the plaintiff waited *awhile longer*, and that on the principles which govern in executed contracts, the plaintiff can not now say it was not valid. It is extremely difficult for us to perceive any analogy between this and the class of cases referred to. How the immediate parties to this contract considered it, is of little moment. If the surety has been deprived of no right, if he has been left perfectly free to manage his concerns with his principal in his own way, if his hands have not been tied, why should he complain? And with what justice can he avoid the payment of this debt?

It is also said this transaction took place in Kentucky; that a parol notice is there valid, and that the defendant in that state, in equity, would be entitled to relief, and ought, therefore, to be relieved at law here, the principles of equity in relation to principal and surety having been adopted by courts of law in their fullest extent. On this point we will occupy but a moment. A most conclusive answer to the argument is, that there was no evidence to show that the notice was given in Kentucky on the trial of the cause, nor is there such evidence with the papers now before us. The action is brought in our court; and from all the circumstances connected with the transaction, it is more probable, in the absence of express proof, that the notice was given in Cincinnati than Kentucky. The *lex loci* then governs the case.

The motion for a new trial must be overruled, and judgment entered on the verdict.