Ranney, J.
The questions determined in the court below, arose upon a demurrer to the petition; and the overruling of the demurrer and, thereupon, rendering judgment for the plaintiff, is the error now assigned, and for which a reversal of the judgment is asked.
Without going very much into detail, the facts appearing in *178 the petition, are substantially these. Moore having but a life estate in certain lots and buildings in the city of Cincinnati, leased them for a term of years to different persons, and died before the expiration of the term thus created. One of these leases was made to Justus Wright, and by him assigned to L. and E. Burckhardt. In this lease, Moore covenanted to pay to the lessee or his assigns, at the expiration of the lease, the appraised value of all buildings put upon the, premises within two years from the commencement of the term. This lease was made on the 6th of November, 1849, and run for te.-i years. Moore died June 6, 1854, and within the time prescribed in the covenant, buildings were erected. No sue! provision was inserted in the other leases, but the terms created by them, were cut short by the death of Moore. At Moore’s death, the remainder in fee, of all the property, was in one Mary Ann Marshall, and she had the immediate right to enter upon the premises, and oust the tenants therefrom. Moore died testate, leaving his widow, Isabella Moore, executrix of his estate. In this situation of things, and upon claims being regularly preferred by the Burckhardts, she came to a settlement with them, and upon their releasing the estate from all liability upon the lease, and all contracts .and covenants therein, she agreed to pay them the sum of $2000; which, for reasons of their, own, they directed her to pay to A. Symmes, trustee for said Mary Ann Marshall. To avoid liability upon the other leases, she agreed with Symmes in consideration of his executing a deed of confirmation by which said leases should be confirmed to the lessees for the residue of their terms, and the estate discharged from all liability on account thereof, to pay him the further sum of $800. In respect to both these settlements, it is averred that they were made to the advantage of the estate, and prevented the recovery of large damages against it, and that these facts “ constituted, an adequate consideration ” for the sums of money agreed to be paid. In carrying this arrangement into complete effect, Isabella Moore executed and delivered to Symmes three several instruments in writing, all of the same tenor and effect, *179 and -with slight variations in amount, the following is a copy of each:
“$934.00. Cincinnati, Oct. 13,1854.
For value received, one year after date, I promise to pay Americus Symmes, or order, nine hundred and thirty-four dollars, with interest at the rate of ten per cent, per year from this date until paid; and I, as executrix of Hugh Moore, deceased, allow the same as a valid claim against the estate of said deceased, to be paid as aforesaid, with interest as aforesaid, in part payment of damages on leases held by Burckhardt & Co. on Hammond street, Andrew Somers on Hamilton Road and Walnut street, and a tenant of another brick house and premises at the south-east corner of Hamilton Road and Walnut street, all now or lately the property of Mary Ann Marshall, reserving to myself the privilege, at any time,_ of paying off this note by paying the principal with interest accrued from date. Isabella Moore.”
It is first insisted, that these instruments were the simple promissory notes of Isabella Moore. Let it be granted that they were, and that she was personally liable upon them; and yet it must be admitted that they are something more, and contain a distinct allowance of the sums specified in them as valid claims against the estate of Hugh Moore. There is certainly no intimation that the creditor (if Symmes occupied that position), intended to rely alone upon Isabella Moore, or to release the estate she represented from liability; and in such case it is well settled that, “ where an executor or administrator has given his own note in payment of a debt of the testator, or intestate, the estate would not thereby be released, unless such was the agreement of the parties; and this, although the executor may have settled and given himself credit in his account for the debt. In such a case the creditor might, at his election, hold the executor personally liable, or proceed by bill against the estate.” Bronly v. Peters, 10 Peter’s R. 140 ; Douglas v. Frazer, 1 Rich. Eq. R. 105.
But it is said that no right of action existed against the estate of Hugh Moore, and that the allowance of these sums as claims against that estate was a simple attempt of the execu *180 trix to create a liability which she had personally incurred, and throw the burden upon the estate. That she could not do that, or even revive a debt of the estate once barred, is too clear to need argument or illustration. If this petition is true, however, Isabella Moore owed no debt, and was subject to no liability, and she clearly states upon the face of these instruments that she is providing for liabilities incurred upon the breach, or apprehended breach, of the covenants of Hugh Moore; and, in our opinion, she was well justified in doing so. That no rights of action were yet absolutely perfected, may be entirely true; but if liabilities existed which were certain to ripen into such rights of action, she was authorized to prevent the breach of the covenants into which her testator had entered, by performing his engagements, or compensating for their breach, as, in the exercise of an honest judgment, might be most for the interests of his estate: Gray v. Hawkin's adm’r, 8 Ohio St. Rep. 449. Indeed, the courts of this state have gone much further, and have given the administrator quasi power over equitable interests in real estate, by allow-' ing him to rescind contracts, when it is done in good faith and for the manifest advantage of the estate. Howard v. Babcock, 7 Ohio Rep. 72. But whether this can be rightfully done or not, it is certain that the law has vested him with the title in trust of all the personal estate, with the positive power and duty of settling, allowing, and paying all the just debts and liabilities of the estate. In accomplishing this object, -this court has decided that “ an executor or administrator has the power at common law to submit to arbitration a disputed claim against the estate which he represents. This power is not affected by the provisions of the statute which authorize the submission of such disputed claims to referees.” Child’s Ex’r. v. Updike, 9 Ohio St. Rep. 333.
The whole doctrine is well stated by the supreme court of Pennsylvania.
In Doherty v. Stephenson, 20 Penn. St. Rep. 214, the court says: “ The main question is, whether the personal representatives of a decedent who has made an entire contract, and died before it was finished,-can by any act of theirs, excuse *181 the other party from the full performance of it, so that he may recover for the work already done. Executors or administrators may not create a new cause of action against the estate whose interests they are charged with, nor revive an old one barred by the statute of limitations; but they may adjust any existing claim by a fair compromise, or arrange the business in their hands so as to make the most of the assets.”
Where, as in this case, the matter is complicated and unusual, the personal representative would undoubtedly consult his own security, by obtaining the previous sanction of the probate court; but that he has the power to do it without, and take upon himself the risks of a subsequent approval, we can not doubt. To hold otherwise, would be to take from him the power to make a complete settlement of the estate, and to embark it in the expenses and delays of litigation, however ruinous it might be to its interests.
In the case before us, the executrix settled and allowed one of the liabilities, and prevented a breach of the covenants in the others, by causing the contracts of her testator to be performed. Each was equally within her power and duty, and upon this demurrer, and in the absence of any contrary showing, we are bound to assume that everything was done in good faith, and to the interest and advantage of the estate she represented. Under such circumstances, the representative of the estate afterward appointed, was not at liberty to disregard her allowance of the sums necessary to effect these legitimate objects, and the superior court decided correctly in overruling his demurrer, and giving judgment for the sums allowed, with six per cent, interest.
Judgment affirmed.
Peck, C.J., and Gholson, Brinkerhoee and Scott, JJ., concurred.